**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| Elizabeth Dixon, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No.: |
| vs. | |
| COLGATE-PALMOLIVE (AMERICA) INC., COLGATE-PALMOLIVE HOLDING INC., COLGATE-PALMOLIVE INTERNATIONAL LLC, COLGATE-PALMOLIVE INVESTMENTS INC., GABA HOLDINGS DELAWARE, LLC, | **CLASS ACTION COMPLAINT** **(JURY TRIAL DEMANDED)** |
| *Defendants*. | |

Plaintiff Elizabeth Dixon ("Plaintiff") by and through undersigned counsel brings this action against Colgate-Palmolive (America) Inc., Colgate-Palmolive Holding Inc., Colgate-Palmolive International LLC, Colegate-Palmolive Investments Inc., and Gaba Holdings Delaware LLC (Defendants" or "Fabuloso") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this case as a result of Defendants' manufacturing, marketing, and sale of Defendants' Fabuloso brand cleaning products[1] ("Recalled Products") throughout the state of North Carolina  and the country.

---

[1] Fabuloso® recall.com, Fabuloso® Recall.com (2023), https://www.fabuloso.com/recall (last visited Feb 9, 2023).

2.     Defendants have improperly, deceptively, and misleadingly labeled and marketed its Recalled Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that consumption of the Recalled Products may increase the risk of contracting invasive infections.

3.     As described in further detail below, the Recalled Products contain Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria, which could lead to serious and life-threatening adverse health consequences. The risk of serious infection is also particularly concerning for immunocompromised individuals that are highly susceptible to life threatening diseases and even death from Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria ingestion.[2] [3] This is egregious, especially because people are spreading this bacteria all over their homes by using a product that is supposed to clean their home.

4.     Defendants specifically list both the active and inactive ingredients of the Recalled Products on the labeling; however, Defendants fail to disclose that the Recalled Products contain, or are at the risk of containing, Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria.

5.     Insofar as Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria made its way into Defendants' Recalled Products purposefully, it should have been listed on the Recalled Products labeling. Insofar as it made its way into the Recalled Products by accident, it follows that it was due to poor manufacturing processes by either Defendants and/or their agents. Further evidencing this fact, Defendants have issued a recall for the Recalled Products.

---

[2] Pseudomonas aeruginosa infection, Centers for Disease Control and Prevention (2019), https://www.cdc.gov/hai/organisms/pseudomonas.html (last visited Feb 9, 2023).
[3] https://annalsmicrobiology.biomedcentral.com/articles/10.1007/s13213-019-01501-7

6. Consumers like the Plaintiff trust manufacturers such as Defendants to sell products that are safe and free from harmful known substances, including Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria.

7. Plaintiff and those similarly situated ("Class Members") certainly expect that the cleaning products they purchase will not contain, or risk containing, any knowingly harmful substances that are not disclosed.

8. Unfortunately for consumers, like Plaintiff, the cleaning products they purchased contain Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria

9. Defendants are using a marketing and advertising campaign that omits from the ingredients lists that the Recalled Products include Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria.

10. Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendants' labels reasonably believes that they are purchasing a product that is safe to touch and does not contain any harmful bacterium. Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Recalled Products. Thus, reasonable consumers would not think that Defendants are omitting that the Recalled Products contain, or are at risk of containing, Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria.

11. Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Recalled Products do contain, or risk containing, Pseudomonas aeruginosa

and Pseudomonas fluorescens bacteria, which is dangerous to one's health, well-being, and even life. Nevertheless, Defendants do not list or mention Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria anywhere on the Recalled Products' packaging or labeling.

12.     Plaintiff and Class Members relied on Defendants' misrepresentations and omissions of the safety of the Recalled Products and what is in the Recalled Products when they purchased them

13.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a cleaning product contaminated with a known bacterium that is harmful to consumers health, and lives, which is even more so true for immunocompromised individuals.

14.     That is because Defendants' Products containing, or at risk of containing, a known dangerous substance have no value.

15.     As set forth below, cleaning products, such as Defendants' Products, that contains harmful bacteria, are in no way safe for humans and are entirely worthless.

16.     Alternatively, Plaintiff and Class Members paid a price premium for the Recalled Products based upon Defendants' health-conscious marketing and advertising campaign including its false and misleading representations and omission on the Recalled Products' labels. Given that Plaintiff and Class Members paid a premium for the Recalled Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

17.     Accordingly, Defendants' conduct violated and continues to violate, inter alia, North Carolina Gen Stat 75-1-1. Defendants also breached and continues to breach its warranties regarding the Products.

18.     Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## **FACTUAL BACKGROUND**

19.     Defendant Colgate Palmolive manufactures, markets, advertises, and sells cleaning products to clean surfaces in the home. Specifically, the Recalled Products are used to clean the toughest dirt and grime and deodorize with one powerful solution.

20.     On February 8, 2023, Defendants issued a recall in which over 4.5 million Fabuloso products were recalled.[4]

21.     Pursuant to the back labeling of the Recalled Products, it is recommended that the Recalled Products be used on hard, nonporous surfaces, including floors, sinks, counters, stoves, bathtubs, shower stalls, tiles, and more. Also, Fabuloso brand products are so powerful and concentrated that they need to be diluted with water.[5] An example of these representations on the back labeling of the Recalled Products and the Fabuloso website as depicted below:

[space left intentionally blank]

_____

[4] Fabuloso® recall.com, Fabuloso® Recall.com (2023), https://www.fabuloso.com/recall (last visited Feb 9, 2023).
[5] Lavender all-purpose cleaner: Fabuloso®, Lavender All-Purpose Cleaner | Fabuloso®, https://www.fabuloso.com/products/multi-purpose-cleaner/lavender (last visited Feb 9, 2023).



Source: https://www.fabuloso.com/products/multi-purpose-cleaner/lavender

22.     What is concerning is that many consumers, like Plaintiff and Class Members, use disinfecting products, akin to the Recalled Products, on a regular basis in their homes, especially to protect against the coronavirus or other infectious diseases.[6]

23.     Accordingly, sales of cleaning products have steadily increased as consumers have become more vigilant and bacteria conscious regarding the cleanliness of their homes. With that in mind, the cleaning products market was valued at USD 33.8 billion in 2021 and is expected to grow with a compound annual growth rate of 4.9% from 2022 to 2028.[7]

24.     Consumers have become increasingly concerned about the effects of ingredients in products that they inhale and/or touch. Companies such as Defendants have capitalized on consumers' desire for cleaning products, and indeed, consumers are willing to pay, and have paid, a premium for these products

25.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria, especially at the point of sale, and therefore must and do rely on Defendants to truthfully and honestly report what the Products contain or are at risk of containing on the Recalled Products' packaging or labels

26.     The Recalled Products' packaging does not identify Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria. Indeed, Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria is not listed in the ingredients section, nor is there any warning about the

---

[6] GUIDANCE FOR CLEANING AND DISINFECTING, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/pdf/Reopening_America_Guidance.pdf (last visited Feb 9, 2023).
[7] https://www.grandviewresearch.com/industry-analysis/household-cleaners-market-report#:~:text=The%20global%20household%20cleaners%20market,4.9%25%20from%202022%20to%202028.

inclusion (or even potential inclusion) of Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria in the Recalled Products. This leads reasonable consumers to believe the Recalled Products do not contain and are not at risk of containing dangerous chemicals like Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria.

27.     However, despite the fact that the Recalled Products' labeling and ingredient listing, Defendants omits that the Recalled Products contains or is at risk of containing Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria

28.     Specifically, Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria is a gram-negative bacterium that can survive on inanimate surfaces for months. Moreover, Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria can be transmitted through airborne exposure and skin-to-skin contact. Consequently, consumers, like Plaintiff and Class Members, are at risk by using Defendants' Recalled Products as the Recalled Products are used to clean surfaces, which allows Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria to infect individuals by either being in close proximity to the applied surface or by touching the applied surface.

29.     Moreover, twenty-first century research has confirmed that Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria inhalation and exposure can cause death to immunocompromised individuals.[8]

---

[8] Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria infection, Centers for Disease Control and Prevention (2019), https://www.cdc.gov/hai/organisms/pseudomonas.html (last visited Feb 9, 2023).

30. Defendant, Colgate-Palmolive, is one of the oldest and leading companies of cleaning products in the United States is responsible for the manufacturing of some of the most popular house cleaning products.[9]

31. This is why Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria in Defendant's Products is particularly concerning, as also evidenced by Defendants recalling the Recalled Products.

32. Defendant, Colgate-Palmolive, is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing cleaning products for many years, including producing and manufacturing the Products.

33. Defendants are in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Recalled Products and possesses unique and superior knowledge regarding the manufacturing process of the Recalled Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria contamination.

34. Accordingly, Defendants possess superior knowledge regarding the risks involved in the production and manufacturing of its Recalled Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

35. Defendants have a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Recalled Products.

36. Therefore, Defendants' false, misleading, and deceptive omissions regarding the Recalled Products containing Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria is

---

[9] Our story, Fabuloso®, https://www.fabuloso.com/our-story (last visited Feb 9, 2023).

likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

37.     Defendants' misrepresentation and omission was material and intentional because people are concerned with what is in the products that they inhale and touch. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Recalled Products labels, and the listed ingredients. Defendants know that if they had not omitted that the Recalled Products contained Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria, then Plaintiff and the Class would not have purchased the Recalled Products at all.

38.     Through its deceptive advertising and labeling, Defendants have violated, inter alia, insert applicable state law by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

39.     Consumers rely on marketing and information in making purchasing decisions.

40.     By omitting that the Recalled Products include Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria on the labels of the Recalled Products throughout the Class Period, Defendants know that those omissions are material to consumers since they would not purchase cleaning materials with a harmful bacterium.

41.     Defendants' deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions

42.     Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

43.     Defendants' false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members

44.     In making the false, misleading, and deceptive representation and omission described herein, Defendants know and intended that consumers would pay a premium for a product marketed as having the ability to clean without the bacterium Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria over comparable products not so marketed.

45.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representation and omission, Defendants injured Plaintiff and the Class Members in that they

46.     Paid a sum of money for Recalled Products that were not what Defendants represented;

47.     Paid a premium price for Recalled Products that were not what Defendants;

48.     Were deprived of the benefit of the bargain because the Recalled Products they purchased was different from what Defendants warranted; and

49.     Were deprived of the benefit of the bargain because the Recalled Products they purchased had less value than what Defendants represented.

50.     Had Defendants not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Recalled Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Recalled Products.

51.     Plaintiff and the Class Members paid for Recalled Products that do not contain Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria. Since the Recalled Products do indeed contain Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria, a harmful bacterium, the Recalled Products Plaintiff and the Class Members received were worth less than the Recalled Products for which they paid

52.     Plaintiff and the Class Members all paid money for the Recalled Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Recalled Products due to Defendants' misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Recalled Products than they would have had they known the truth about the Recalled Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

53.     Plaintiff and Class Members read and relied on Defendants' representation about the benefits of using the Recalled Products and purchased Defendants' Products based thereon. Had Plaintiff and Class Members known the truth about the Recalled Products, i.e., that it contains a harmful bacterium (i.e. Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

54.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of North Carolina , and Defendants are citizens of Delaware and New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

55.     This Court has jurisdiction over each Defendant because Defendants are authorized to conduct and do business in North Carolina. Defendants have marketed, promoted, distributed, and sold Recalled Products in North Carolina, and Defendants have sufficient minimum contacts with this State and/or have sufficiently availed themselves of the markets in this State through promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

56.     Venue is proper because Plaintiff and many Class Members reside in the Western District of North Carolina, and throughout the state of North Carolina. A substantial part of the events or omissions giving rise to the Class's claims occurred in this district

## PARTIES

57.     Plaintiff Elizabeth Dixon is a citizen and resident of Henderson County, North Carolina. During the applicable statute of limitations period, Plaintiff purchased Defendants' Fabuloso Product that was subject to the recall.

58.     Had Defendants not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Recalled Products.

59.     Specifically Plaintiff purchased, purchased more of, and/or paid more for, the Recalled Products than she would have had she known the truth about the Recalled Products. The Recalled Products Plaintiff received were worthless because they contain the known harmful substance, Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria.

60.     Defendant, Colgate-Palmolive, is a Delaware corporation with its principal place of business in New York, New York. Colgate-Palmolive is headquartered at 300 Park Avenue,

New York, NY 10022.[10] The Colgate-Palmolive Company is one of the largest manufacturers of consumer products in the United States and responsible for producing some of the most popular off the shelf cleaning products as well as toothpaste, soaps, and other consumer products.[11]

61.     Defendant Colgate-Palmolive Holding Inc. is a subsidiary of above mentioned Defendant. Defendant Colgate-Palmolive Holding Inc., is a Delaware corporation with its agent address located at 1209 ORANGE ST, WILMINGTON, New Castle, DE, 19801.[12]

62.     Defendant Colgate-Palmolive International, LLC is a Delaware corporation with its agent address located at 1209 ORANGE ST, WILMINGTON, New Castle, DE, 19801.[13]

63.     Colgate-Palmolive Investments Inc. is a Delaware corporation with its agent address located at 1209 ORANGE ST, WILMINGTON, New Castle, DE, 19801.[14]

64.     GABA HOLDINGS DELAWARE, LLC is a Delaware corporation with its agent address located at 1209 ORANGE ST, WILMINGTON, New Castle, DE, 19801[15]

65.     Defendants manufacture, market, advertise, and distribute the Recalled Products throughout the United States.[16]

66.     Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Recalled Products.


[space left intentionally blank]

## CLASS ALLEGATIONS

---

[10] https://investor.colgatepalmolive.com/node/19186/html
[11] https://www.colgatepalmolive.com/en-us/who-we-are/history
[12]
[13] https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx
[14] Id.
[15] Id.
[16] https://www.britannica.com/topic/Colgate-Palmolive-Company

67.     Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

68.     The Class is defined as all consumers who purchased the Recalled Products anywhere in the United States during the Class Period.

69.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of North Carolina at any time during the Class Period (the "North Carolina Subclass").

70.     The Class and North Carolina Subclass shall be referred to collectively throughout the Complaint as the Class.

71.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.  Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the North Carolina Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

b.  Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    i.  Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Recalled Products;

ii. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Recalled Products;

iii. Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Recalled Products;

iv. Whether Defendants' false and misleading statements and omissions concerning its Recalled Products were likely to deceive the public; and

v. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

c. <u>Typicality:</u> Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Recalled Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

d. <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

e. <u>Predominance:</u> Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

f.   <u>Superiority:</u> A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    i.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    ii.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    iii.   When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    iv.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    v.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

    vi.   This class action will assure uniformity of decisions among Class Members;

    vii.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

    viii.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

ix. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false advertising to purchase their Recalled Products.

x. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## <u>CLAIMS</u>

### FIRST CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

72. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73. Defendants provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Recalled Products are safe for use and do not contain Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria.

74. Defendants omitted that the Recalled Products contain a known bacterium from its ingredients labeling. This omission would lead reasonable consumers did not contain a known bacterium, when in fact, the Recalled Products were contaminated with Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria as stated herein

75. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

76. These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

77. Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Recalled Products.

78. Defendants knowingly breached the express warranties by including Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria in the Recalled Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Recalled Products.

79. Within a reasonable time after it knew or should have known, Defendants did not change the Recalled Products' label to include Pseudomonas aeruginosa and Pseudomonas fluorescens bacteria in the ingredients list.

80. As a direct and proximate result of Defendants' breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Recalled Products, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### NEGLIGENCE
**(On Behalf of the Class and the North Carolina Sub-Class and Against All Defendants)**

81. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

82. At all times, Defendants produced the Recalled Products for commercial purposes. Defendants marketed, promoted, and sold their the Recalled Products throughout the United States, including this District.

83. Plaintiff has been exposed to harmful bacteria through Defendant's Recalled Products.

84. It is foreseeable that Plaintiff would be exposed to harmful bacteria because the Recalled Products were used to clean in Plaintiff's home.

85. At all relevant times, Defendants, jointly and severally, owed a duty to Plaintiff and to all others similarly situated, to design, manufacture, formulate, develop, prepare, process, inspect, test, market, advertise, package, and label the Recalled Products in a manner reasonably calculated to permit said Recalled Products to be used without endangering the health of the consumers using the them.

86. Further, Defendants owed a duty to warn and instruct regarding the use of Defendants' own Recalled Products.

87. Defendants, jointly and severally, breached their duty to Plaintiff in the following particulars:

a. failed to adequately warn Plaintiff of the dangerous characteristics of psuedonomas bacteria, psuedonomas bacterial contamination, and the risks contained within the Recalled Products;

b. failed to place adequate warnings on containers of the Recalled Products, warning of the potential risk of bacterial contamination;

c. failed to properly develop a product development strategy that would eliminate the risk of bacterial contamination;

d. developing a product that was improperly developed and produced, according to the FDA;

88.     But for Defendants' negligent production of the Recalled Products, Plaintiff would not have suffered injury.

89.     Further, it is foreseeable that someone using a cleaning solution, such as Fabuloso, would be in close contact with such solution, possibly even directly to one's skin.

90.     It is foreseeable that in opening a bottle of Fabuloso, mixing or diluting Fabuloso, and then applying Fabuloso to the cleaning device or cleaning surface, one would come into physical contact with Fabuloso. Alternatively, it is foreseeable that one would inhale vapors from Fabuloso given the necessary dilution of Fabuloso and the tactile nature of cleaning.

91.     Due to Defendant's breach, Plaintiff, along with other Class members have suffered damages in an amount to be determined at trial. Plaintiffs have at a very minimum suffered damages in that they have been deprived of their benefit of the bargain as they are now left with a worthless and dangerous Fabuloso product.

## THIRD CAUSE OF ACTION

### UNJUST ENRICHMENT
### (On Behalf of the Class and the North Carolina Sub-Class and Against All Defendants)

92.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

93.     As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Recalled Products.

94.     In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

95.     Specifically, Plaintiff Dixon conferred a benefit upon Defendants when purchasing the Fabuloso Brand Product.

96. Defendants accepted this benefit in that they have retained monies from Plaintiff's purchase, along with purchases of other Class Members.

97. Plaintiff's purchase was not gratuitous as Plaintiff paid money for such Fabuloso brand products.

98. As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

99. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

100. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive manufacturing, labeling, and marketing of the Recalled Products and/or to Plaintiff and members of the Class.

101. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

102. The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.

103. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

104. Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation/Omission
### (On Behalf of the Class and the North Carolina Sub-Class and Against All Defendants)

105. Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

106. Through their labeling and advertising and the course of their regular business, Defendants made representations to Plaintiff and the Class members concerning the active and inactive ingredients (as well as the alleged uncontaminated nature) in the Recalled Products.

107. Defendants intended that the Plaintiff and the Class members rely on their representations.

108. Defendants' representations were material to Plaintiff and the Class members' decision to purchase the Recalled Products.

109. Defendants have a duty to provide accurate information to consumers with respect to the ingredients and/or contaminants identified in the Recalled Products as detailed above.

110. Defendants failed to fulfill its duty to accurately disclose in its labeling and advertising that the Recalled Products and/or were contaminated with a dangerous and deadly bacterium.

111. Additionally, Defendants have a duty to not make false representations with respect to the Recalled Products.

112. Defendants failed to fulfill their duty or use ordinary care when they made false representations regarding the quality and safety of the Recalled Products as detailed above.

113. Such failures to disclose on the part of Defendants amount to negligent omission, and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

114. Plaintiff and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

115. By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial

## FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY
**(On Behalf of the Class and the North Carolina Sub-Class and Against All Defendants)**

116. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

117. Because the Recalled Products are contaminated with the *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such Recalled Products are used.

118. Plaintiff and members of the Class purchased the Recalled Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

119. The Recalled Products were not altered by Plaintiff or members of the Class.

120. Plaintiff and members of the Classes were foreseeable users of the Recalled Products.

121. Plaintiff and members of the Class used the Recalled Products in the manner intended.

122. As alleged, Defendants' Recalled Products were not adequately labeled and did not disclose that they were contaminated with *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria.

123. The Recalled Products did not measure up to the promises or facts stated in the marketing, packaging, labeling, advertisement, and communications by and from Defendants.

124. Defendants impliedly warranted that the Recalled Products were merchantable, fit, and safe for ordinary use.

125. Defendants further impliedly warranted that the Recalled Products were fit for the particular purposes for which they were intended and sold.

126. Contrary to these implied warranties, Defendants' Recalled Products were defective, unmerchantable, and unfit for their ordinary use when sold and unfit for the particular purpose for which they were sold.

127. By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**Strict Product Liability – Failure to Warn**
**(On Behalf of the Class and the North Carolina Sub-Class and Against All Defendants)**

128. Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

129. Defendants sold the Recalled Products in the course of Defendants' business.

130. Defendants knew or should have known that their Recalled Products were contaminated with a dangerous and deadly bacterium.

131. Defendants had a duty to warn Plaintiff and the other Class members about the presence of *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria their artificial tear products.

132. In addition, Defendants had a duty to warn Plaintiff and the other Class members about the dangers of the presence of *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria in the Recalled Products.

133. Defendants knew that the risk of exposure to *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria from use of its Recalled Products was not readily recognizable to an ordinary consumer and that consumers would not inspect the product for bacteria.

134. Defendants did not warn/did not give adequate warnings to Plaintiff and the other Class members that the Recalled Products were contaminated with the *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria or about the dangers of the presence of *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria in their artificial tear products.

135. Plaintiff and the other Class members used the Recalled Products in a manner that as reasonably anticipated by Defendants.

136. Plaintiff and the other Class members suffered damages by purchasing Recalled Products and using them in a manner promoted by Defendants and in a manner that was reasonably foreseeable by Defendants. Plaintiff and the members of the Class would not have purchased Defendants' Recalled Products had they known they contained *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria.

137. Plaintiff and the other Class members were justified in their reliance on Defendants' manufacturing, labeling, packaging, marketing, and advertising of the product for use as cleaning products.

138. Plaintiff and the other Class members have suffered damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### Strict Product Liability – Manufacturing Defect
### (On Behalf of the Multi-State Class and the North Carolina Sub-Class and Against All Defendants)

139. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

140. Defendants manufactured and sold the Recalled Products in the course of Defendants' business.

141. The Recalled Products contained a manufacturing defect when they left the possession of Defendants. Specifically, the Recalled Products differ from Defendants' intended result or from other lots of the same product line because they were contaminated with the *Pseudomonas aeruginosa and Pseudomonas fluorescens* bacteria.

142. Plaintiff and the other Class members used the Recalled Products in a way that was reasonably foreseeable to and anticipated by Defendants.

143. As a result of the defects in the manufacture of the Recalled Products, Plaintiff and the other Class members suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

**Violation of the North Carolina Unfair Trade Practices Act
N.C.G.S. § 75-1.1, ET SEQ.
(N.C. GEN. STAT. §75-1-1, et seq.)
(On behalf of Plaintiffs and the North Carolina Sub-Class)**

144. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

145. North Carolina General Statute § 75-1.1 prohibits unfair and deceptive trade practices, stating: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

146. Defendants violated N.C.G.S. § 75-1.1 by committing the following unfair and deceptive acts and practices:

a. The sale of the Recalled Products to Plaintiff under the guise that it was free from defects or bacteria that would substantially impair the use, safety, or value of the Class Product, which was accompanied by the aggravating factor that Defendants knew of, or should have known of, and consciously failed to disclose, the existence of the bacterial contamination at the time it marketed and transacted with the class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

a. An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class/Sub-Class, and requiring Defendants to bear the costs of class notice;

b. An order enjoining Defendants from selling the Recalled Products and;

c. An order enjoining Defendants from suggesting or implying that the Recalled Products are safe and effective for human application;

d. An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as continuing to recall existing Recalled Products, as well as prevent them from selling these products;

e. An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

f. An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

g. An order requiring Defendants to disgorge any ill-gotten benefits received from Plaintiff and members of the Class/Sub-Class as a result of any wrongful or unlawful act or practice, such as violating any relevant manufacturing standard when manufacturing and selling the Recalled Products;

h. An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

i. An order awarding attorneys' fees and costs to Plaintiff and the Class/Sub-Class; and

j. An order providing for all other such equitable relief as may be just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 10, 2023

Respectfully submitted,

*/s/ Blake G. Abbott*
Blake G. Abbott (State Bar No. 57190)
Paul J. Doolittle (Pro Hac Vice Forthcoming)
**POULIN | WILLEY |
ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email: blake@akimlawfirm.com
pauld@akimlawfirm.com
